Carl W. SWEARSON, James L. Stevens and Raymond Sabo, Plaintiff,

v.

A. P. MEYERS, Kansas City Police Chief, Donald Martin, City Attorney of Kansas City, Individually and in their official capacities, Mayor John E. Reardon, Patrick G. Hanlon and Thomas F. Lally, City Commissioners, Individually and in their official capacities, Defendants.

Civ. A. No. 78–2034.

United States District Court, D. Kansas.

April 14, 1978.

---

13. Judgment was entered for the plaintiff in the amount of $125,000 on September 16, 1977.

Barry A. Fisher, Robert C. Moest, Beverly Hills, Cal., Michael Lerner, of Barnett & Lerner, Kansas City, Kan., for plaintiff.

Richard E. Keithley, Asst. City Atty., Kansas City, Kan., for defendant United States.

## MEMORANDUM AND ORDER

O'CONNOR, District Judge.

Plaintiffs bring this action under 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201–02, and seek to have the Kansas City, Kansas solicitation licensing law, Kansas City Code § 41–32 *et seq.,* declared unconstitutional and its enforcement enjoined. Plaintiffs are members of The Holy Spirit Association for the Unification of World Christianity ("Unification Church"). The defendants are officials of the city of Kansas City, Kansas.

The ordinance being challenged (a complete copy of which is attached as Appendix "A" to this opinion) establishes a Charitable Solicitations Committee, which is given the duty of investigating applicants for permits

for charitable or religious solicitations, and recommending the issuance or denial of such permits. The Board of City Commissioners receives the recommendation of the Charitable Solicitations Committee, and is empowered to grant, deny, or revoke permits. (§§ 41–50, 41–54). Solicitations without a permit are forbidden. (§ 41–48).

■ The Unification Church, according to plaintiffs, emphasizes, *inter alia,* "public-place proselytizing and solicitation of funds to support the church." Plaintiffs desire to distribute literature and solicit contributions in city parks and on public sidewalks. Without question, this activity is controlled by the solicitation licensing law. If plaintiffs attempt to engage in such activity without a permit, they will be subjecting themselves to possible arrest and prosecution.[1] On behalf of the Unification Church, plaintiffs applied for a religious solicitation permit in November of 1977. On November 23, 1977, the Charitable Solicitations Committee recommended that the permit application be denied. (See Appendix "B" attached to this opinion). On December 13, 1977, the Board of City Commissioners followed the recommendation of the Charitable Solicitations Committee and denied the permit application. The ordinance provides no further remedy when an application has been turned down by the Board of City Commissioners. Thus, it appears that plaintiffs have exhausted all available administrative remedies prior to bringing this action, even though exhaustion of such remedies is not a prerequisite to the filing of a civil rights suit under Section 1983. *Gibson v. Berryhill,* 411 U.S. 564, 573, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973); *Damico v. California,* 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967); *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

Plaintiffs set forth three arguments in support of their contention that the solicitation licensing law is unconstitutional:

1. The ordinance is unconstitutionally vague in that it does not provide narrow, definite, and objective standards for determining whether the permits are to be granted or denied, and effectively vests discretion in city officials to grant or deny licenses for the exercise of First Amendment rights;

2. The ordinance lacks adequate due process safeguards for individuals whose applications are denied. See *e.g., Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965);

3. The ordinance is constitutionally invalid because of overbreadth.

This case is before the court upon plaintiffs' motion for a preliminary injunction. Plaintiffs have submitted affidavits and exhibits in support of their motion, and defendants have filed an opposing affidavit. A hearing was held on April 5, 1978, at which time the parties were given the opportunity to present further evidence; both sides declined to do so and agreed to submit the matter on the materials already filed, together with supporting memoranda.

■ A party seeking a preliminary injunction must demonstrate a reasonable probability of ultimate success on the merits, and that he will be irreparably injured if preliminary injunctive relief is not granted. *Penn v. San Juan Hospital, Inc.,* 528 F.2d 1181 (10th Cir. 1975); *Continental Oil Co. v. Frontier Refining Co.,* 338 F.2d 780 (10th Cir. 1964); *Chris-Craft Industries, Inc. v. Bangor Punta Corp.,* 426 F.2d 569 (2nd Cir. 1970); *Dole v. Carter,* 444 F.Supp. 1065 (D.Kan.1977).[2] We do not hesitate to

---

1. There are, however, no such prosecutions currently pending, and thus the court need not at this time concern itself with the dictates of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

2. The prerequisites for the granting of preliminary injunctive relief are perhaps of much less concern to us than normal, inasmuch as there appear to be no disputed issues of fact involved in this case. Indeed, plaintiffs contend that the challenged ordinance is unconstitutional *on its face* (and also as applied to plaintiffs). Thus, it appears that the motion for a preliminary injunction was made only as a means of expediting the case, and it is highly probable that the preliminary injunctive relief granted today will be quickly translated into permanent injunctive relief.

conclude that plaintiffs adequately meet the irreparable injury requirement. The loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury. *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976).

We must now turn to plaintiffs' substantive arguments and test for probability of success on the merits. We begin by rejecting defendants' contention that plaintiffs' desired activities are not worthy of First Amendment protection. It is well-settled law that distribution of literature and solicitation of funds to support a religious organization are well within the protection of the First Amendment. *Murdock v. Pennsylvania,* 319 U.S. 105, 111, 63 S.Ct. 870, 87 L.Ed. 1292 (1943); *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976); *ISKCON v. Engelhardt,* 425 F.Supp. 176 (W.D.Mo.1977). Other basic principles which are fundamental to our discussion are that areas protected by the First Amendment may be regulated "only with narrow specificity," *NAACP v. Button,* 371 U.S. 415, 433, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); and that laws restricting the exercise of First Amendment activities are inherently suspect and bear a heavy presumption against their constitutional validity. *Shuttlesworth v. Birmingham,* 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969). The general test of vagueness applies with particular force in review of laws dealing with First Amendment rights. "[S]tricter standards of permissible statutory vagueness may be applied to a statute having a potentially inhibiting effect on speech; a man may the less be required to act at his peril here, because the free dissemination of ideas may be the loser." *Hynes v. Mayor of Oradell,* 425 U.S. 610, 620, 96 S.Ct. 1755, 1760, 48 L.Ed.2d 243 (1976); quoting *Smith v. California,* 361 U.S. 147, 151, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959).

Plaintiffs' argument that the ordinance is constitutionally invalid because it lacks definite standards and vests discretion in city officials is supported by a long line of Supreme Court cases invalidating state or local licensing laws. See *Lovell v. Griffin,* 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938); *Hague v. C.I.O.,* 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939); *Schneider v. State,* 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939); *Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); *Largent v. Texas,* 318 U.S. 418, 63 S.Ct. 667, 87 L.Ed. 873 (1943); *Staub v. City of Baxley,* 355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958); *Shuttlesworth v. Birmingham, supra; Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975); *Hynes v. Mayor of Oradell, supra.* The common thread running through these opinions is that licensing laws governing conduct protected by the First Amendment are invalid unless they include precise, narrow, definite, and objective standards from which the appropriate official must make his decision to grant or deny the license application. The cases cited above seem to deal exclusively with licensing laws held invalid, and except in a negative fashion do little in teaching what "standards" would be constitutionally adequate. It is clear, however, that the standards must be more than mere criteria or guidelines; they must be complete in and of themselves, and leave no factors to be assessed, judgments to be made, or discretion to be exercised by the appropriate licensing official. In other words, *the decision to grant or deny the license application must be virtually a ministerial one.* Speaking for a unanimous court in *Cantwell, supra,* Justice Roberts said:

"It will be noted, however, that the Act requires an application to the secretary of the public welfare council of the State; that he is empowered to determine whether the cause is a religious one, and that the issue of a certificate depends upon his affirmative action. If he finds that the cause is not that of religion, to solicit for it becomes a crime. He is not to issue a certificate as a matter of course. His decision to issue or refuse it involves appraisal of facts, the exercise of

judgment, and the formation of an opinion. He is authorized to withhold his approval if he determines that the cause is not a religious one. Such a censorship of religion as the means of determining its right to survive is a denial of liberty protected by the First Amendment and included in the liberty which is within the protection of the Fourteenth.

". . . Without doubt a state may protect its citizens from fraudulent solicitation by requiring a stranger in the community, before permitting him publicly to solicit funds for any purpose, to establish his identity and his authority to act for the cause which he purports to represent. The state is likewise free to regulate the time and manner of solicitation generally, in the interest of public safety, peace, comfort or convenience. *But to condition the solicitation of aid for the perpetuation of religious views or systems upon a license, the grant of which rests in the exercise of a determination by state authority as to what is a religious cause, is to lay a forbidden burden upon the exercise of liberty protected by the Constitution.*" 310 U.S. at 305–307, 60 S.Ct. at 904–905 (emphasis supplied, footnotes omitted).

The Supreme Court's most recent ruling on the constitutionality of a local licensing law is found in *Hynes v. Mayor of Oradell,* 425 U.S. 610, 96 S.Ct. 1755, 48 L.Ed.2d 243 (1976). The challenged ordinance in that case required that advance written notice be given to the local police department by "any person [including representatives of Borough Civic Groups and Organizations] desiring to canvass, solicit or call from house-to-house . . . for a recognized charitable cause, or . . . for a Federal, State, County, or Municipal campaign or cause . . . for identification only." The Court held the ordinance constitutionally invalid because of vagueness. Specifically, the Court emphasized that the ordinance provided no adequate explanation of what was meant by a "*recognized* charitable cause," a "Federal, State, County, or

Municipal . . . *cause,*" or "Borough Civic Groups and Organizations." In addition, the Court found the ordinance to be invalid because it did not "sufficiently specify" what a license applicant had to do to comply with the identification requirement, and because the ordinance did not "provide explicit standards for those who apply them." Citing *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222 (1972). Speaking for the majority, Chief Justice Burger concluded:

"[O]rdinance No. 598A must fall because in certain respects 'men of common intelligence must necessarily guess at its meaning.' *Connally v. General Constr. Co.,* 269 U.S. 385, 391, [46 S.Ct. 126, 70 L.Ed. 322] (1926).

". . . To the extent that these ambiguities and the failure to explain what 'identification' is required give police the *effective* power to grant or deny permission to canvass for political causes, the ordinance suffers in its practical effect from the vice condemned in *Lovell, Schneider, Cantwell,* and *Staub.* See also *Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, [92 S.Ct. 839, 31 L.Ed.2d 110] (1972); *Coates v. City of Cincinnati,* 402 U.S. 611, 614, [91 S.Ct. 1686, 29 L.Ed.2d 214] (1971); Note, The Void-for-Vagueness Doctrine in the Supreme Court, 109 U.Pa.L.Rev. 67, 75–85 (1960)." 425 U.S. at 620, 622, 96 S.Ct. at 1760–1761.

■ A close reading of the ordinance which plaintiffs challenge in this case plainly demonstrates that it contains numerous general terms, which are nowhere defined, and whose meaning "men of common intelligence must necessarily guess at." In addition, the ordinance clearly calls upon city officials to assess factors, make a judgment, and exercise discretion. Section 41–50(3) reads as follows:

"The Committee and Board of Commissioners, in arriving at a *recommendation* and *decision* on any application for a permit under this division, shall also take into *consideration* the following:

(1) The *nature* and *content* of the publicity, *propaganda,* literature and data proposed to be used and whether any such material is of a *derogatory* or *inflammatory* nature, makes *false* or *excessive claims,* or makes an *unfair* or *inappropriate exploitation* of the *unfortunate* to be aided.

(2) Whether at least seventy-five (75) percent of the total receipts of the last general solicitation as shown by the annual audit or financial statement submitted with the application were used and are proposed to be used for the *charitable and religious purposes* of the applicant; provided, however, that an applicant proposing to conduct a single fund-raising event shows that fifty (50) percent of its total estimated receipts were used and will be used for the *charitable and religious purposes* of the applicant.

(3) Whether the applicant has an *active* and *responsible* governing body, serving without compensation, holding *regular meetings,* and with *effective* administrative control.

(4) Whether the applicant has representation of citizens of this city on its *governing body* or committee; or has an active local unit; or provides or will provide, within one (1) year from the date of the application, *services of a direct or indirect, local or nonlocal nature* to citizens of the city.

(5) Whether the *failure to furnish* in the application the *information* required under section 41–49 is with or without a *reasonable explanation.*

(6) Whether the solicitation is *primarily* for the *private profit* of the promoters and the character and general reputation of the promoters.

(7) Whether the number of solicitations scheduled for the time required by the applicant exceeds two (2) or more; and in such instances preference shall be given to applicants who have solicited with a permit during the preceding year." (Emphasis supplied).

The ordinance comes clearly within the forbidden zone outlined by such cases as *Cantwell, Staub,* and *Mayor of Oradell.* Thus, we are forced to conclude that the ordinance is unconstitutional, both on its face and as applied in this case. Plaintiffs' motion for a preliminary injunction will be granted, and enforcement of the ordinance will be enjoined.

Having ruled in favor of plaintiffs on the strength of their first argument, consideration of plaintiffs' other arguments becomes unnecessary. See *Hynes v. Mayor of Oradell, supra,* 425 U.S. at 622, 96 S.Ct. 1755. Nor would it be appropriate for the court to suggest to defendants how the ordinance could be rewritten so that it might pass constitutional muster. However, if defendants do attempt to rewrite the ordinance, we would hope that they would at least give some consideration to the other arguments raised by plaintiffs. Specifically, we might suggest that defendants consider whether a new ordinance should contain additional due process safeguards. See *Freedman v. Maryland, supra; Southeastern Promotions, Ltd. v. Conrad, supra.* In addition, we are of the opinion that defendants would be well-advised to give some thought to whether a new ordinance could be invalidated. due to overbreadth; and whether it would be constitutionally appropriate to make the issuance or denial of the license hinge in part upon such factors as the nature of the material distributed or solicitations made; the degree of local membership which the applicant can demonstrate; the financial history of the applicant; or whether the applicant has made a prior request for a license. See *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976); *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); *Police Department of the City of Chicago v. Mosley,* 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972); and other cases cited in Part VI of plaintiffs' brief.

IT IS THEREFORE ORDERED that: plaintiffs' motion for a preliminary injunction be sustained; a preliminary injunction

issue enjoining defendants from enforcing the Kansas City, Kansas solicitation licensing law, Kansas City Code §§ 41.32 thru 41.54; counsel for plaintiff shall prepare, circulate, and submit to the court for approval a journal entry of judgment reflecting today's holding; when the journal entry granting the preliminary injunction is submitted, the court will determine the amount of a security bond that plaintiffs must furnish in accordance with Rule 65 of the Federal Rules of Civil Procedure.

APPENDIX "A"

## KANSAS CITY CODE

### Article III. Charitable and Religious Solicitations *

* **Cross reference**—License tax for solicitors and group solicitors, §§ 22–130, 22–181.

DIVISION 1. GENERALLY

## Sec. 41–32. Definitions.

Whenever used in this article unless a different meaning is apparent from the context, the following words and phrases shall have the meanings herein ascribed to them.

*Sec. 41–32(1). Charitable.* "Charitable" shall mean and include the words patriotic, philanthropic, social service, welfare, benevolent, educational, civic, or fraternal, either actual or purported.

*Sec. 41–32(2). Committee.* "Committee" shall mean the charitable solicitations committee created by section 41–33.

*Sec. 41–32(3). Contributions.* "Contributions" shall mean and include the words alms, food, clothing, membership, money, subscription, pledge, property or donation under the guise of a loan of money or property.

*Sec. 41–32(4). Person.* "Person" shall mean any individual, group, firm, copartnership, corporation, company, agency, association or joint stock association, church, religious sect, religious denomination, society, organization or league, and includes any trustee, receiver, assignee, agent or other similar representative thereof.

*Sec. 41–32(5). Promoter.* "Promoter" shall mean any person who promotes manages, supervises, organizes or attempts to promote, manage, supervise or organize a campaign of solicitation.

*Sec. 41–32(6). Religious and religion.* "Religious" and "religion" shall not mean and include the word "charitable," but shall be given their commonly accepted definitions.

*Sec. 41–32(7). Solicit and solicitation.* "Solicit" and "solicitation" shall mean the request, directly or indirectly, of money, credit, property, financial assistance or other thing of value on the plea or representation that such money, credit, property, financial assistance or other thing of value will be used for a charitable or religious purpose, as defined in this section. These words shall also mean and include the following methods of securing money, credit, property, financial assistance or other thing of value on the plea or representation that it will be used for a charitable or religious purpose:

(1) Any oral or written request.

(2) The distribution, circulation, mailing, posting or publishing of any handbill, written advertisement or publication.

(3) The making of any announcement to the press or over the radio or television or by telephone or telegraph concerning an appeal, assemblage, athletic or sports event, bazaar, benefit, campaign, contest, dance, drive, entertainment, exhibition, exposition, party, performance, picnic, sale or social gathering, which the public is requested to patronize or to which the public is requested to make a contribution for any charitable or religious purpose connected therewith.

(4) The sale of or the offer or attempt to sell of any advertisement, advertising space, book, card, chance, coupon, device, magazine, membership, merchandise, subscription, ticket or other thing in connection with which any appeal is made for any charitable or religious purpose, or where the name

of any charitable or religious person is used or referred to in any such appeal as an inducement or reason for making any such sale, or when or where, in connection with any such sale, any statement is made that the whole or any part of the proceeds from any such sale will go or be donated to any charitable or religious purpose.

A "solicitation," as defined herein, shall be deemed completed when made, whether or not the person making the same receives any contribution or makes any sale referred to in this section. (Ord.No.42718, § 1, 1–17–61)

## Sec. 41–33. Committee created; composition, appointment, etc., of committee.

There is hereby created a charitable solicitations committee, which shall be composed of seven (7) members, citizens of the city, including representatives of business and industry, labor and trades, professions, racial groups, religious groups, women's groups and veterans' groups, who shall be appointed by the mayor and board of commissioners. Such committee shall serve without compensation. Four (4) members initially appointed to such committee shall be appointed for a term of two (2) years and three (3) members so appointed shall be appointed for a term of four (4) years. Thereafter, such members shall be appointed for a term of four (4) years, and until the successors are appointed and qualified. In the case of vacancy, successors shall be appointed to fill the unexpired term. (Ord. No.42718, § 2, 1–17–61)

Cross references—Position of secretary to charitable solicitations committee created, § 2–69.

## Sec. 41–34. Credentials for solicitors.

It shall be the duty of all persons, organizations, societies, associations and corporations to whom permits have been issued under this article for a charitable or religious solicitation to furnish proper credentials to their agents and representatives for such solicitation. (Ord.No.42718, § 11, 1–17–61)

## Sec. 41–35. Receipt for contributions.

Any person receiving money or anything having a value of one dollar ($1.00) or more from any contributor under a solicitation made pursuant to a permit granted under this article shall give to the contributor a written receipt signed by the solicitor, showing plainly the name and permit number of the person under whose permit the solicitation is conducted, the date and the amount received. This section shall not apply to any contributions collected by means of a closed box or receptacle unattended by a solicitor used in solicitation where it is impractical to determine the amount of such contributions and a permit has been issued. (Ord.No.42718, § 12, 1–17–61)

## Sec. 41–36. Misrepresentations and fraud.

No person shall directly or indirectly solicit contributions for any religious or charitable purpose by misrepresentation of his name, occupation, financial condition, social condition or residence, and no person shall make or perpetrate any other misstatement, deception or fraud in connection with any solicitation of any contribution for any purpose in the city. (Ord.No.42718, § 14, 1–17–61)

## Sec. 41–37. Report and financial statement required upon completion of solicitation.

It shall be the duty of every person holding a solicitation permit under this article to furnish to the charitable solicitations committee, by filing with the city clerk, within thirty (30) days after the solicitation has been completed, a verified detailed report and financial statement, including the amount of cash raised by solicitation, the amount pledged for future payment, the amount expended in collecting such funds, and a detailed statement of the final disposition of such funds. If such funds are collected over a period of time, supplemental statements shall be filed every thirty (30) days, covering the amount of collections and the final disposition of the funds

so collected, until the whole of such funds pledged and collected have been accounted for. Failure to furnish such report within the time herein specified shall constitute a misdemeanor.

No person shall make or perpetrate any misrepresentation, misstatement or deception in any report filed pursuant to this section. (Ord.No.42718, §§ 13, 14, 1–17–61)

Secs. 41–38—41–47. Reserved.

## DIVISION 2. PERMIT

### Sec. 41–48. Required; exceptions.

No person shall solicit contributions for any charitable or religious purpose within the city, without a permit from the city clerk authorizing such solicitation. The provisions of this section shall not apply to any established person organized and operated exclusively for religious or charitable purposes and not operated for the pecuniary profit of any person, if the solicitations by such established person are conducted among the members thereof by other members or officers thereof, voluntarily and without remuneration for making such solicitations, or if the solicitations are in the form of collections or contributions at the regular assemblies or services of any such established person. (Ord.No.42718, § 3, 1–17–61)

### Sec. 41–49. Application.

An application for a permit required by this division shall be made to the committee upon forms provided by the city. Such application shall be sworn to and filed with the city clerk at least forty-five (45) days prior to the time at which the permit applied for shall become effective; provided, however, that the committee may, for good cause shown, give consideration to an application filed less than forty-five (45) days prior to the effective date of the permit applied for. The application herein required shall contain the following information or, in lieu thereof, a detailed statement of the reason or reasons why such information cannot be furnished:

(1) The name, address or headquarters of the person applying for the permit.

(2) If the applicant is not an individual, the names and addresses of the applicant's principal officers and management and a copy of the resolution, if any, authorizing such solicitation, certified to as a true and correct copy of the original by the officer having charge of the applicant's records.

(3) The purpose for which such solicitation is to be made, the total amount of funds proposed to be raised thereby, and the use or disposition to be made of any receipts therefrom.

(4) The names and addresses of the persons by whom the receipts of such solicitations shall be disbursed.

(5) The name and address of the person who will be in direct charge of conducting the solicitation and the names of all promoters connected or to be connected with the proposed solicitation.

(6) An outline of the method or methods to be used in conducting the solicitation.

(7) The time when such solicitation shall be made, giving the preferred dates for the beginning and ending of such solicitation.

(8) The amounts of any wages, fees, commissions, expenses or emoluments to be expended or paid to any person in connection with such solicitation, and the names and addresses of all such persons.

(9) An annual audit or financial statement for the last preceding fiscal year of the applicant, prepared by an independent certified public accountant, trust company, or other appropriate person giving the amount of money raised, the cost of raising it and the final distribution. A new organization should provide an affidavit that a proper financial system has been installed.

(10) The proposed budget for the year in which the funds are to be raised and distributed.

(11) A full statement of the character and extent of the charitable, patriotic or philanthropic work being done by the applicant within the city, the United States or elsewhere.

(12) A statement setting out the actual or estimated costs in full of solicitation in this city and the anticipated amount of funds to be raised in this city. If the applicant has solicited for funds in this city within the last five (5) years, the application must include a statement setting out the amount of funds collected and the cost of solicitation for the last year in which funds were solicited.

(13) A statement setting out whether minors are to be used in soliciting and, if so, setting out in what manner such minors are to be used.

(14) A statement setting out whether coin repectacles are to be placed in public buildings or in business establishments.

(15) A statement setting out whether solicitation of funds is to be conducted by the tag day or street sale method.

(16) A statement setting out whether there will be a distribution of tickets or merchandise with a request for money in return.

(17) A statement setting out whether the applicant intends to conduct a general public telephone solicitation.

(18) The applicant must attach copies of all available campaign publicity, advertisements, and literature proposed to be used in the solicitation.

(19) A statement to the effect that, if a permit is granted, it will not be used or represented in any way as an endorsement by the city or any department or officer thereof.

(20) Such other information as may be reasonably required by the committee in order for it to determine the kind and character of the proposed solicitation and whether such solicitation is in the interest of, and not inimical to, the public welfare.

No person shall make or perpetrate any misrepresentation, misstatement or deception in any application filed pursuant to this section. (Ord.No.42718, §§ 4, 14, 1–17–61)

**Sec. 41–50. Investigation and recommendation by committee; hearing by board of commissioners; issuance or denial.**

*Sec. 41–50(1).* All applications received by the city clerk under this division shall be turned over to the charitable solicitations committee for investigation. Such committee shall, within thirty (30) days after the application has been received by the committee, make a recommendation to the board of commissioners as to whether or not a permit should be granted or rejected. The recommendation of the committee shall be transmitted to the city clerk for submission to the board of commissioners and the clerk shall notify the applicant thereof. In the event the committee recommends rejection, the city clerk shall, within three (3) days after receipt of such recommendation, notify the applicant of the action of the committee and the date on which the application will be submitted to the board of commissioners for its action. Such hearing before the board of commissioners shall be set not less than ten (10) days nor more than fifteen (15) days after the recommendation of the committee is received by the city clerk.

*Sec. 41–50(2).* The charitable solicitations committee and the board of commissioners, in arriving at a recommendation and decision on any application for a permit under this division, shall take into consideration the means and methods heretofore used and proposed to be used by the applicant in the solicitation, and shall consider whether the applicant:

(1) Pays commissions for fund raising.

(2) Mails or distributes unordered tickets or merchandise with a request for money in return.

(3) Conducts a general telephone solicitation of the public.

(4) Uses minors to solicit, either alone or accompanied by a responsible adult holding identification provided by the holder of the permit.

(5) Places coin receptacles in public buildings or business establishments.

(6) Uses the tag day or street sales method, unless the applicant has used such method in the year preceding that of the application under consideration.

(7) Uses a method which interferes with or obstructs the movement of vehicles within the boundaries of the city.

*Sec. 41–50(3).* The committee and board of commissioners, in arriving at a recommendation and decision on any application for a permit under this division, shall also take into consideration the following:

(1) The nature and content of the publicity, propaganda, literature and data proposed to be used and whether any such material is of a derogatory or inflammatory nature, makes false or excessive claims, or makes an unfair or inappropriate exploitation of the unfortunate to be aided.

(2) Whether at least seventy-five (75) per cent of the total receipts of the last general solicitation as shown by the annual audit or financial statement submitted with the application were used and are proposed to be used for the charitable and religious purposes of the applicant; provided, however, that an applicant proposing to conduct a single fund-raising event shows that fifty (50) per cent of its total estimated receipts were used and will be used for the charitable and religious purposes of the applicant.

(3) Whether the applicant has an active and responsible governing body, serving without compensation, holding regular meetings, and with effective administrative control.

(4) Whether the applicant has representation of citizens of this city on its governing body or committee; or has an active local unit; or provides or will provide, within one (1) year from the date of the application, services of a direct or indirect, local or nonlocal nature to citizens of the city.

(5) Whether the failure to furnish in the application the information required under section 41–49 is with or without a reasonable explanation.

(6) Whether the solicitation is primarily for the private profit of the promoters and the character and general reputation of the promoters.

(7) Whether the number of solicitations scheduled for the time required by the applicant exceeds two (2) or more; and in such instances preference shall be given to applicants who have solicited with a permit during the preceding year.

*Sec. 41–50(4).* Where the proposed solicitation utilizes any of the practices described in paragraphs (1), (2), (3), (4), (5), (6) and (7) of section 41–50(2) of this section, the committee may recommend denial and the board of commissioners may deny the application. Where an applicant agrees not to use any publicity, propaganda, literature, or data objected to by the committee under paragraph (1) of section 41–50(3), the specific conditions contained therein for the issuance of a permit will have been met. Where the findings indicate an applicant does not meet the requirements of paragraphs (2), (3), (4), (5), (6) and (7) of section 41–50(3), the committee may recommend denial and the board of commissioners may deny the application.

*Sec. 41–50(5).* A permit required by this division shall be issued by the city clerk, upon approval of the application by the board of commissioners. (Ord.No.42718, §§ 5, 6, 1–17–61)

### Sec. 41–51. Form and contents.

A permit issued under this division shall be on a form approved by the board of commissioners, and shall bear the name and address of the person by whom the solicitation is made, and shall state that the permit does not constitute an endorsement by the

city, nor any of its officers, employees or departments, of the purpose of the person conducting the solicitation. (Ord.No.42718, § 8, 1-17-61)

## Sec. 41-52. Duplicate to be furnished chief of police.

Upon the granting of a permit under this division, a duplicate thereof shall be furnished the chief of police by the city clerk. (Ord.No.42718, § 7, 1-17-61)

## Sec. 41-53. Not transferable.

No permit issued under this division shall be transferable. (Ord.No.42718, § 7, 1-17-61)

## Sec. 41-54. Hearing and revocation.

*Sec. 41-54(1).* Whenever, it shall be shown, or whenever the chief of police, city clerk, or board of city commissioners has reason to believe that any person to whom a permit has been issued under this division has violated any of the provisions of this article, or that any promoter, agent or solicitor of a permit holder has misrepresented the purpose of the solicitation, and same is communicated to the city clerk, the city clerk shall immediately give the permit holder written notice by certified mail of a hearing by the board of city commissioners to be held within five (5) days of such notice to determine whether or not the permit should be revoked. This notice must contain a statement of the circumstances upon which the action is based. At the hearing the permit holder, and any other interested person, shall have the right to present evidence and any other facts which may aid the board of city commissioners in determining whether this article has been violated and whether the purpose of the solicitation has been misrepresented. The board of city commissioners shall within two (2) days after the hearing give to the permit holder a written statement revoking or stating that no violation or misrepresentation was found to have been committed.

*Sec. 41-54(2).* Notwithstanding the provisions of section 41-54(1), it shall be the duty of the police judge to report to the board of commissioners the names of any persons convicted of violating this article and such conviction shall operate as a revocation of the permit previously issued to such person. The police judge shall take up and file with the city clerk all permits issued to any person so convicted, and shall endorse thereon the amount of the fine assessed against such person, together with the date of such conviction.

*Sec. 41-54(3).* The chief of police shall be notified forthwith by the board of commissioners of the suspension or revocation of any permit issued under this division. (Ord. No.42718, §§ 9, 10, 15, 1-17-61; Ord.No. 44982, § 1, 6-15-65)

Amendment note—Ord.No.44982, § 1, amended § 41-54(1) by deleting the provisions regarding suspension of permit prior to the hearing on revocation.

## APPENDIX "B"

### EDWARD H. POWERS SR.

Attorney-at-Law
486 NEW BROTHERHOOD BUILDING
KANSAS CITY, KANSAS 66101
342-1800

November 23, 1977

Board of City Commissioners
City of Kansas City, Kansas
Municipal Office Building
7th Ann Avenue
Kansas City, Kansas 66101

> RE: Application to solicit funds
> by Holy Spirit Association
> For The Unification of World
> Christianity

Gentlemen:

The Charitable Solicitations Committee held a hearing on November 22, 1977 to consider an application by the above organization for a permit to solicit funds in Kansas City, Kansas for a period from December 1, 1977 through December 31, 1978.

The organization was represented by Carl Swearson and was also represented by Irving Achtenberg and Irvin Belzer, Ozark National Life Building, 906 Grand Avenue, Kansas City, Missouri, attorneys at law.

Committee members present at the hearing were Joyce Abraham, Willie Walker, Reverend Robert Wallace, Mike Calcara and Edward H. Powers, Sr.

The applicant agreed to stand on the information furnished in the application but further agreed to answer any questions propounded by the Committee. By this method the Committee obtained all information pertinent to the application. After consideration of such evidence the Committee finds as follows:

1. The Committee finds that the period of solicitation, namely, from December 1, 1977 to December 31, 1968 is in excess of what has been accepted as a conventional solicitation period and would inhibit proper supervision and control of such solicitation. The applicant stated that no individual group would be in charge of such solicitation for that period but that various groups of "missionaries" would come to the city at various times for that period for such solicitation. There would be no permanent or continuous chairman or committee conducting such solicitation for this extended period.

2. The applicant states that it is not the practice of the soliciting "missionaries" to give receipts for contributions received which may be contrary to the provisions of Section 41–35 of the City ordinance.

3. The organization presented a minimal budget for the disbursement of funds which it anticipates would be received by solicitation for the period but did not submit an annual audit or financial statement for the past fiscal year as is required by Section 41--49 of the ordinance. The Committee was of the opinion that the applicant was not a new organization, which conclusion was supported by evidence furnished the Committee by the applicant. The applicant testified that a previous headquarters had existed at 4322 Pearl Street in Kansas City, Kansas and that the Unification Church was an established national organization. The applicant further stated that even in the event that such an audit or financial statement was properly required under the ordinance the organization would decline to furnish same to the City.

4. The applicant stated that there was a newly established church at 2128 North 5th Street in Kansas City, Kansas. However, information as to the exact function of said church was vague. The applicant further stated that Mr. James Stephens in charge of the church on 5th Street had been in the city approximately six weeks and that it was the practice of the church to transfer people from place to place. From the information received the Board considered it doubtful that the provisions of Section 41–50 (3 and 4) would be properly satisfied by the evidence received by the Committee as a standard for its decision. These sections relate to a maintaining of an active and responsible governing body with administration control with a representative of the citizens of Kansas City, Kansas on the governing body. The Committee likewise is in doubt as to the services this church would render the City or its citizens.

For these reasons your Charitable Solicitations Committee recommends to the Board of City Commissioners that such application be denied.

Respectfully yours,

(s) EDWARD H. POWERS, SR., CHAIRMAN CHARITABLE SOLICITATIONS COMMITTEE

EHP:bs