Scott **GREENE**, on his behalf and on behalf of all others similarly situated, Plaintiff,

v.

William **SINCLAIR**, St. Joseph City Manager; Arthur Preston, St. Joseph City Attorney; William Mihalik, St. Joseph City Chief of Police; Patrick Phelan, St. Joseph City Clerk; Individually and in their official capacities; and the City of St. Joseph, a Municipal Corporation, Defendants.

No. K 80–15 CA8.

United States District Court, W. D. Michigan, S. D.

March 17, 1980.

7. This ruling, of course, leaves plaintiff's other antitrust and contract claims unscathed.

**20**

Edward T. Stein, Singer & Stein, Chicago, Ill., Kent W. Mudie, Twohey, Maggini, Muldoon, Mudie & Sullivan, Grand Rapids, Mich., for plaintiff.

Arthur G. Preston, Jr., pro se and for defendants.

OPINION AND ORDER

BENJAMIN F. GIBSON, District Judge.

The plaintiff, Scott Greene, on behalf of himself and all those similarly situated, has filed this civil rights suit against the City of St. Joseph, Michigan and several named city officials, seeking declaratory and injunctive relief pursuant to 42 U.S.C. §§ 1983, 1988, and 28 U.S.C. §§ 2201–2202. Plaintiff and members of his class are members of the Holy Spirit Association for the Unification of World Christianity (hereinafter "Unification Church"). They seek to distribute religious tracts and solicit donations for their church on the public sidewalks, in the parks, and at other public places in St. Joseph, Michigan, and claim that their First Amendment rights of free expression and free exercise of religion have been, and continue to be, abridged by the defendants' threats to enforce against them the St. Joseph Solicitation Licensing Law, Chapter 75.01 et seq., St. Joseph Code of Ordinances (a copy of which is attached as Appendix "A" to this opinion).

■ Plaintiffs have requested the Court to issue a preliminary injunction enjoining enforcement of the ordinance against them. The defendants have responded with a motion to dismiss and a motion for summary judgment.[1]

Rule 65 of the Federal Rules of Civil Procedure governs motions for preliminary relief. The Rule, in pertinent part, reads as follows:

(a) Preliminary Injunction.

(1) *Notice.* No preliminary injunction shall be issued without notice to the adverse party.

---

1. As a preliminary matter, the Court finds no bar to the exercise of its jurisdiction under the principles of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), because no prosecutions are presently pending under the ordinance here challenged. Nor are the *Younger* restrictions a bar to the issuance of a preliminary injunction.

At the conclusion of a successful federal challenge to a state statute or local ordinance, a district court can generally protect the interests of a federal plaintiff by entering a declaratory judgment, and therefore the stronger injunctive medicine will be unnecessary. But prior to final judgment there is no established declaratory remedy comparable to a preliminary injunction; unless preliminary relief is available upon a proper showing, plaintiffs in some situations may suffer unnecessary and substantial irreparable harm.

*Doran v. Salem Inn, Inc.,* 422 U.S. 922, 931, 95 S.Ct. 2561, 2567, 45 L.Ed.2d 648 (1975).

(2) *Consolidation of Hearing With Trial on Merits.* Before or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application. Even when this consolidation is not ordered, any evidence received upon an application for a preliminary injunction which would be admissible upon the trial on the merits becomes part of the record on the trial and need not be repeated upon the trial. This subdivision (a)(2) shall be so construed and applied as to save to the parties any rights they may have to trial by jury.

.    .    .    .    .

(c) Security. No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. No such security shall be required of the United States or of an officer or agency thereof.

The provisions of Rule 65.1 apply to a surety upon a bond or undertaking under this rule.

(d) Form and Scope of Injunction or Restraining Order. Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

In one of its most recent discussions on the issue of preliminary injunctions, the Sixth Circuit has set out the following requirements which must be considered before preliminary relief may issue:

1) Whether the plaintiffs have shown a strong or substantial likelihood or probability of success on the merits;

2) Whether the plaintiffs have shown irreparable injury;

3) Whether the issuance of a preliminary injunction would cause substantial harm to others;

4) Whether the public interest would be served by issuing a preliminary injunction.

*Mason County Medical Association v. Knebel*, 563 F.2d 256, 261 (6th Cir. 1977).

Plaintiffs have argued several reasons for holding that the challenged ordinance is unconstitutional. Their most relevant argument is that the sections they have attacked are a prior restraint and impose an unnecessary and unconstitutional burden on the exercise of their First Amendment rights due to the absence of clear, narrow, and objective standards to guide the discretion of the licensing authority.[2]

A licensing ordinance is by its very nature a prior restraint on speech and speech-related conduct. Any prior restraint on the exercise of First Amendment expressions is inherently suspect, and bears a heavy presumption against its constitutional validity. *E. g., Shuttlesworth v. Birmingham*, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969); *Bantam Books v. Sullivan*, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963); *Kunz v. New York*, 340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 267 (1951). To pass constitutional muster a licensing system must accomplish a legitimate, compelling, and overriding governmental interest that is unachievable by a less restrictive alternative means.

2. Plaintiffs also argue that the ordinance is overbroad, and that it lacks the procedural safeguards mandated by the Supreme Court in *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). This Court's decision obviates the need for discussion of these other issues.

The defendants' position, as presented through counsel at the hearing, is that they have a right to regulate religious solicitation activities in order to protect the citizenry of St. Joseph from crime and annoyance. To this end they claim that they can constitutionally require information concerning: 1) what organization is involved in order to verify on a case by case basis whether it is a genuine religious organization (in this case defendants freely admit that the Unification Church is a *bona fide* religion); and 2) when the proposed solicitation will take place (both as to days and times) in order to both better protect against crime and to avoid the annoyance that potentially could result from several religious groups soliciting door-to-door on the same day. Counsel for defendants further asserted that consideration by the City Commission as to whether to issue a license under the ordinance takes no more than one week, and that the city would automatically waive the licensing fee upon the request of a religious group.

Counsel for the plaintiffs, however, pointed out that this interpretation of the ordinance by the defendants had been developed only after the filing of this case—an assertion which counsel for the defendants freely admitted. Indeed, defendants' post-hoc interpretation of the ordinance is in direct conflict with the language of the ordinance on some points. Defendants' present interpretation, for example, places the licensing authority in the hands of the City Commission, while the ordinance vests that authority with the City Clerk. In addition, there appears to be no authority under the ordinance for the waiver of the license fee. Indeed, the language of § 75.14 is mandatory: "The following fees *shall be paid* for the several classes of licenses . . . ," and § 75.03 provides that "All applications for licenses . . . *shall be accompanied by the fee* hereinafter specified." (Emphasis added).

But even assuming enforcement only under this narrow and restrictive interpretation of the ordinance there still are no clear, definite, and objective standards

to guide the discretion of those with licensing authority. Under defendants' interpretation the ordinance provides the City Commission with the authority to determine on a case by case basis whether one seeking a religious solicitation license is a representative of a genuine religious organization. Yet this is precisely the sort of discretion that led to the demise of the religious solicitation licensing statute at issue in *Cantwell v. Connecticut*, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940). There, as here, the government argued that the statute did not impose a prior restraint on the dissemination of religious views but was merely a safeguard against "the perpetration of frauds under the cloak of religion." *Id.* at 304, 60 S.Ct. at 903–904. The *Cantwell* Court found nothing wrong with this goal, it merely held that the requirement of a license was an impermissible means of attaining it.

Nothing we have said is intended even remotely to imply that, under the cloak of religion, persons may, with impunity, commit frauds upon the public. Certainly penal laws are available to punish such conduct. Even the exercise of religion may be at some slight inconvenience in order that the State may protect its citizens from injury. Without doubt a State may protect its citizens from fraudulent solicitation by requiring a stranger in the community, before permitting him publicly to solicit funds for any purpose, to establish his identity and his authority to act for the cause which he purports to represent. The State is likewise free to regulate the time and manner of solicitation generally, in the interest of public safety, peace, comfort or convenience. But to condition the solicitation of aid for the perpetuation of religious views or systems upon a license, the grant of which rests in the exercise of a determination by state authority as to what is a religious cause, is to lay a forbidden burden upon the exercise of liberty protected by the Constitution.

*Id.* at 306–07, 60 S.Ct. at 904–905 (footnote omitted).

It is well settled that areas protected by the First Amendment may be regulated "only with narrow specificity," *NAACP v. Button*, 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963); *Cantwell v. Connecticut*, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940). Exactly what standards would pass muster under the Constitution is not completely clear.

> It is clear, however, that the standards must be more than mere criteria or guidelines; they must be complete in and of themselves, and leave no factors to be assessed, judgments to be made, or discretion to be exercised by the appropriate licensing official. In other words, *the decision to grant or deny the license application must be virtually a ministerial one.*

*Swearson v. Meyers*, 455 F.Supp. 88, 91 (D. Kansas 1978) (emphasis in original), *citing, Hynes v. Mayor of Oradell*, 425 U.S. 610, 96 S.Ct. 1755, 48 L.Ed.2d 243 (1976); *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975); *Shuttlesworth v. Birmingham*, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969); *Staub v. City of Baxley*, 355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958); *Largent v. Texas*, 318 U.S. 418 (1943); *Cantwell v. Connecticut*, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); *Schneider v. State*, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939); *Hague v. C. I. O.*, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939); *Lovell v. Griffin*, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938). In the instant case virtually no standards exist on the face of the ordinance, and those provided by defendants' interpretation of it are clearly not sufficient to make the decision "virtually a ministerial one." It is therefore the conclusion of this Court that plaintiffs have established a strong or substantial likelihood of success on the merits of their claim that the ordinance in question is unconstitutional. In view of this determination the granting of defendants' motion to dismiss or their motion for summary judgment would be inappropriate.

Further, this Court does not hesitate to conclude that plaintiffs have adequately met the irreparable injury requirement. It is beyond question that the loss of First Amendment freedoms, even for minimal periods of time, constitutes irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976).

The Court also is of the opinion that the public interest lies with the protection of First Amendment rights, and that the issuance of a preliminary injunction would serve that end while at the same time would not cause substantial harm to others.

Accordingly, IT IS HEREBY ORDERED that defendants and each of them, their agents, officers, servants, employees, and all persons in active concert and participation with them are enjoined from arresting or participating in the arrest of plaintiffs or those similarly situated for violation of the St. Joseph Solicitation Licensing Law, Chapter 75.01 *et seq.*, St. Joseph Code of Ordinances. IT IS FURTHER ORDERED that defendants' motion to dismiss and motion for summary judgment are denied.

IT IS FURTHER ORDERED that unless a request is made by the defendant within thirty (30) days from this date for the opportunity to present additional evidence, a permanent injunction will issue since there appears to be no factual dispute.

IT IS SO ORDERED.

## APPENDIX A

### CHAPTER 75—MISCELLANEOUS OCCUPATIONS

75.01 *Necessity for License to Engage in Certain Businesses.* No person shall engage in any of the following occupations or businesses, or operate or maintain any place or establishment in which any such occupation or business is conducted or carried on, without first obtaining a license therefor:

(a) Pool and/or billiard hall.

(b) Pawn broker.

(c) Junk dealer and/or junk yard.

(d) Second hand dealer.

(e) Bowling alleys.

(f) Dance hall.

# 24

75.02 *Necessity for License to Hawk, Vend or Peddle.* No person shall peddle or hawk any goods, wares, merchandise or other article or thing of value within the City of St. Joseph, or sell or offer to sell the same, on any public street, sidewalk, alley or other public place, or from house to house or place to place, without first obtaining a license from the City, nor shall any person go from house to house or from place to place within the City of St. Joseph, *or use the telephone,* for the purpose of soliciting or taking orders for goods, wares, merchandise, services or other articles or things of value to be delivered at some subsequent date or dates, without first obtaining a license from the City. (Adopted August 31, 1964.)

75.03 *Applications for Licenses.* All applications for licenses shall be made to the City Clerk, shall contain such information as shall be necessary to fully inform the Clerk with respect thereto, and shall be accompanied by the fee hereinafter specified.

.   .   .   .

.   .   .   .

75.08 *Expiration of License.* No license shall be issued for more than one (1) year or less than one (1) day. All annual licenses shall expire on May 31st of each year. All licenses for a period of less than one (1) year shall expire on the date mentioned thereon.

75.09 *Revocation or Suspension of License.* The City Clerk shall have authority to revoke or suspend any license issued as a result of any misrepresentation or false statement made by the applicant in order to obtain any such license, or in the event the licensee shall violate or fail to comply with any City ordinance or State law. Any person aggrieved by any such suspension or revocation may appeal to the City Commission, within three (3) days thereafter, and the decision of the Commission shall be final. Appeals shall not stay the action of the Clerk in suspending or revoking such license and the same shall remain suspended or revoked during the appeal period.

.   .   .   .

AN ORDINANCE TO AMEND SECTION 75.14 OF THE CODE OF ORDINANCES OF THE CITY OF ST. JOSEPH, PERTAINING TO LICENSE FEES

The City of St. Joseph ordains:

## SECTION I

Section 75.14 of the Code of Ordinances of the City of St. Joseph entitled "License Fees" is hereby modified and amended as follows:

75.14 *License Fees.* The following fees shall be paid for the several classes of licenses required by this ordinance:

| License for | Per day | Per Annum |
|---|---|---|
| Pool and/or Billiard Halls | | $ 20.00 per table |
| Pawn Broker | | $500.00 |
| Junk Dealer and/or Junk Yard | | $500.00 |
| Dance Hall | | $500.00 |
| Peddler or Hawker and First Vehicle | $25.00 | $300.00 |
| Each Additional Vehicle | $25.00 | $300.00 |
| Solicitor | $25.00 | $300.00 |
| Magazine Salesman or Solicitor | $25.00 | $300.00 |
| Itinerant Photographer | $25.00 | $300.00 |
| Photograph Solicitor | $25.00 | $300.00 |
| Carnival, Circus or Fair | $500.00 | |

## SECTION II

This ordinance shall take effect ten (10) days after passage.

Passed and adopted by the City Commission this 21st. day of June, 1976.