Mary Ann WALKER, Eleanor Grace Elliott, and Ken Hardman, Plaintiffs,

v.

Helen WEGNER, Secretary of the Department of Commerce and Consumer Affairs, and Mark V. Meierhenry, Attorney General, Individually and in their official capacities, Defendants.

Civ. No. 79–3051.

United States District Court,
D. South Dakota, C. D.

Sept. 28, 1979.

Barry A. Fisher Law Offices, Barry A. Fisher, Larry J. Roberts, Los Angeles, Cal., Duncan, Olinger, Srstka, Lovald & Robbennolt, P. C., William J. Srstka, Jr., Pierre, S. D., for plaintiffs.

Mark V. Meierhenry, Atty. Gen., State of South Dakota, Pierre, S. D., for defendants.

## MEMORANDUM OPINION

DONALD J. PORTER, District Judge.

### CASE SUMMARY

Plaintiffs attack a statute of the State of South Dakota, SDCL ch. 37–27, as violative of the First and Fourteenth Amendments to the United States Constitution. This action is brought pursuant to 42 U.S.C. § 1983 and its jurisdictional counterpart, 28 U.S.C. § 1343(3). The State statute regulates solicitation of charitable contributions, and vests enforcement powers in the Secretary of Commerce (Secretary). The Secretary and the Attorney General of South Dakota seek to enforce this statute against the Holy Spirit Association for the Unification of World Christianity (Unification Church). Plaintiffs are members of this organization, and desire to distribute literature and solicit contributions on the organization's behalf in the State.

### THE STATUTE

The statute, SDCL ch. 37–27, regulates solicitation of charitable contributions. It requires any organization soliciting contributions to register and give certain information. SDCL 37–27–12. There are numerous exemptions from this registration requirement. SDCL 37–27–3 exempts

"charitable organizations serving a bona fide religious purpose when the solicitation is connected with a related religious purpose". The statute also provides for licensing and regulation of professional fund raisers, and prohibits various deceptive practices.

The final four sections, SDCL 37–27–31 to 37–27–34[1] delineate procedures to be used in enforcing the statute. Under SDCL 37–27–31, any violation of the statute is a Class 2 misdemeanor. SDCL 37–27–32 allows the Secretary to deny any application, suspend or revoke any license or registration, or censure any licensee or registrant if she finds that her order is in the public interest. Under 37–27–33, "in order to protect the public interest", the Secretary may suspend the exempt status of any charitable organization, pending an administrative hearing. Finally, SDCL 37–27–34 grants the circuit court jurisdiction to determine or enjoin violations of ch. 37–27. Nothing in the statute requires the Secretary to go to court for an injunction halting solicitation for charitable or religious causes. On the contrary, Sections 32 and 33 of ch. 37–27 specifically allow the issuance of ex parte orders by the Secretary, halting such solicitation. SDCL 37–27–34 has the purpose of aiding the Secretary, if her orders are insufficient to stop violations of ch. 37–27.

## PROCEDURAL BACKGROUND

On June 27, 1979, the Attorney General wrote the Unification Church's regional director, requesting information that organizations required to register under SDCL 37–27–12 are required to give. On June 28, 1979, the Secretary, acting ex parte under SDCL 37–27–33, entered an order requiring the Unification Church to cease and desist solicitation of contributions in the State. The order also suspended any exemption that the Church might claim under SDCL ch. 37–27 pending an administrative hearing to determine the Church's status under the statute.

The hearing was scheduled for August 22, 1979. On August 17, plaintiffs brought this action for a declaratory judgment that SDCL ch. 37–27 is unconstitutional on its face and as applied to plaintiffs, and for a preliminary and a permanent injunction restraining defendants from interfering with the solicitation of funds for the Church by plaintiffs, and restraining defendants from proceeding with the administrative hearing.

After hearing, this Court, on August 22, entered a temporary restraining order against defendants. As hereafter set forth, after hearing on this 31st day of August, 1979, the preliminary injunction requested by plaintiffs is granted.

## CONTENTIONS OF THE PARTIES

Plaintiffs challenge this statute as violative of the first and fourteenth amendments. It is argued, *first*, that the chapter vests a broad discretion in the Secretary to determine which religious activities or purposes are *bona fide* and thus entitled to exemption from registration, licensing or both. *Second*, plaintiffs argue that the statute vests unlimited discretion in administrative officials to allow or prohibit free exercise of religion, since solicitation of contributions is an integral part of religious

---

1. These four sections read as follows:

37–27–31. Violation as misdemeanor. Any person who knowingly violates any provision of this chapter, or who knowingly gives false information to the department in statements, reports or information required to be filed with the department by this chapter is guilty of a Class 2 misdemeanor.

37–27–32. Denial, suspension or revocation of license or registration—Censure of licensee or registrant. The department may by order, after notice, for good cause shown, deny any application, suspend or revoke any license or registration, or may censure a licensee or regis-

trant if it finds that the order is in the public interest.

37–27–33. Suspension of exempt status pending hearing. The department, pending a hearing, is further granted authority to temporarily suspend the exempt status of any charitable organization granted exemption by this chapter in order to protect the public interest.

37–27–34. Circuit court jurisdiction to determine or enjoin violations. Upon the application of the attorney general the circuit court is vested with jurisdiction to determine or enjoin violations of this chapter.

practice. *Third,* plaintiffs argue that SDCL ch. 37–27 contains no procedural safeguards, which are necessary before the State may exercise a prior restraint on first amendment freedoms, *citing Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). *Fourth,* plaintiffs argue that the statute is broad and vague and fails to give an applicant fair notice of what it requires.

Defendants argue that the statute is constitutional, and that its purpose is to prevent fraud in the solicitation of charitable contributions. Defendants also argue that plaintiffs have an adequate remedy for any alleged constitutional violations, because the *Unification Church* can appeal through the state court system any adverse determination at the administrative level, and may in conjunction with the appeal seek an automatic stay from the circuit court. Such a stay is limited to ten days, unless the circuit court extends it. SDCL 1–26–32.

Defendants' major contention, however, is that this Court should abstain from deciding the case, in accordance with the doctrine of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), since state proceedings involving the same subject matter have been commenced.

## ISSUES

The preliminary injunction request of plaintiffs being now before the court for decision, the following issues are presented:

1. Have plaintiffs made a sufficient showing of success on the merits and irreparable injury to justify the issuance of the injunction?

2. Should the court abstain from deciding this case because of principles of comity and federalism?

## DECISION

I. Injunctive Relief.

The court is not required to decide the merits of this case at this time, but must instead decide whether to issue a preliminary injunction. The standards for deciding on requests for preliminary injunctive relief were set forth in *Minnesota Bearing Company v. White Motor Corp.,* 470 F.2d 1323 (8th Cir. 1973):

(1) substantial probability of success at trial by the moving party . . .

(2) irreparable injury to the moving party absent . . . issuance [of the preliminary injunction]. Other factors which may be considered in the decision to grant or deny the request are the absence of substantial harm to other interested parties, and the absence of harm to the public interest. *Id.* at 1326.

In addition, the Eighth Circuit has recently adopted the alternate tests espoused by the Second and Ninth Circuits, *Fennell v. Butler,* 570 F.2d 263 (8th Cir. 1978):

The Second Circuit has held that a preliminary injunction should issue:

upon a clear showing of either (1) probable success on the merits *and* possible irreparable injury *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

*Id.* at 264; *William Inglis and Sons Baking Co. v. ITT Continental Baking Co.,* 526 F.2d 86, 88 (9th Cir. 1975); *citing Gresham v. Chambers,* 501 F.2d 687, 691 (2nd Cir. 1974); *Sonesta International Hotels Corp. v. Wellington Associates,* 483 F.2d 247, 250 (2nd Cir. 1973).

The court will apply each of these factors to the facts as they appear from the record at this stage of the litigation.

A. *Probability of Success at Trial*

The court finds that plaintiffs have shown a high probability of success at trial. It is highly likely that the statute under consideration will be found violative of the first and fourteenth amendments on one or more of the following grounds:

(1) That it vests overly broad discretion in the Secretary;

(2) That it does not contain the procedural safeguards necessary before a state may place prior restraints on first amendment freedom;

(3) That it is overly broad, vague and fails to give an applicant fair notice of its requirements.

Defendants contend, initially, that the Unification Church's activities are commercial rather than religious, and that the Secretary seeks only to regulate fund raising, not religious practice. It is beyond dispute, however, that fund raising for a religious purpose is fully protected by the first amendment, *Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940). Whether a particular cause is religious is, of course, a delicate and difficult question. As more fully developed later in this opinion, such a decision cannot constitutionally be determined by an administrative official who has power to stop solicitation of funds if he finds that a particular cause is not religious. *Cantwell, supra* at 305, 60 S.Ct. 900. The court turns now to plaintiffs' specific contentions of unconstitutionality.

(1) Overly Broad Administrative Discretion.

The court finds that the statute under consideration, particularly SDCL 37–27–32 and 37–27–33, vest an overly broad discretion in the Secretary to regulate first amendment freedoms. *Hynes v. Mayor of Oradell,* 425 U.S. 610, 96 S.Ct. 1755, 48 L.Ed.2d 243 (1976); *Cantwell v. Connecticut, supra; Swearson v. Meyers,* 455 F.Supp. 88 (D.Kan.1978). The broad powers of the Commerce Department here are similar to those described by Justice Roberts in *Cantwell, supra,* 310 U.S. at 305, 60 S.Ct. at 904:

> It will be noted, however, that the Act requires an application to the secretary of the public welfare council of the State; that he is empowered to determine whether the cause is a religious one, and that the issue of a certificate depends upon his affirmative action. If he finds that the cause is not that of religion, to solicit for it becomes a crime. He is not to issue a certificate as a matter of course. His decision to issue or refuse it involves appraisal of facts, the exercise of judgment, and the formation of an opinion. He is authorized to withhold his

approval if he determines that the cause is not a religious one. Such a censorship of religion as the means of determining its right to survive is a denial of liberty protected by the First Amendment and included in the liberty which is within the protection of the Fourteenth.

This court notes that the specific issue to be decided in the Secretary's administrative hearing was whether the Unification Church was a "bona fide religion", and whether the funds raised were to be applied to a "related religious purpose," terms nowhere defined in the statute.

■ The court appreciates the fact that a state has the right to protect its citizens from fraudulent solicitation of charitable contributions. This need was also recognized by the Supreme Court of the United States in *Cantwell* and *Mayor of Oradell, supra.* The first amendment does not, however, permit any state to indefinitely suspend the right to exercise first amendment freedoms, nor does it permit the exercise of such freedoms to be abridged by an administrative determination of what is or is not a "bona fide religion":

> But to condition the solicitation of aid for the perpetuation of religious views or systems upon a license, the grant of which rests in the exercise of a determination by state authority as to what is a religious cause, is to lay a forbidden burden upon the exercise of liberty protected by the Constitution. *Cantwell v. Connecticut, supra,* at 307, 60 S.Ct. at 905.

The court finds that the broad power granted to the Secretary under SDCL 37–27–32 and 37–27–33 to revoke and suspend registrations, thus prohibiting organizations from soliciting, is the same type of regulation condemned in *Cantwell, supra.* The statute, therefore, cannot survive an attack based on the first and fourteenth amendments.

(2) Lack of Procedural Safeguards.

Plaintiffs also contend that the statute does not contain procedural safeguards necessary when a state seeks to impose a prior restraint on freedom of expression. *Freed-*

*man v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). *See also, Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975); *International Society for Krishna Consciousness v. Rochford,* 585 F.2d 263 (7th Cir. 1978). The necessary safeguards, as delineated in *Freedman, supra* 380 U.S. at 58–59, 85 S.Ct. at 739 are as follows:

a. The burden of proving that the conduct is unprotected must rest on the administrative agency;

b. The procedure cannot be such that it would lend an effect of finality to the administrative agency's determination;

c. Any restraint imposed in advance of a judicial determination must be limited to preservation of the status quo for the shortest fixed period compatible with sound judicial solution of the controversy;

d. The procedure must assure a prompt final decision to minimize the deterrent effect of an interim and possibly erroneous denial of a license.

It is clear that these constitutionally mandated safeguards require that the burden of seeking a judicial resolution be on the Secretary, that the final determination must be by a *court*, not the Secretary, and that any orders suspending registrations, licenses or exemptions must be limited by statutorily prescribed standards. Under SDCL 37–27–32 and 37–27–33, the Secretary is the finder of facts. Any judicial review undertaken under SDCL ch. 1–26 is limited to a "clearly erroneous" standard. SDCL 1–26–36(5). The burden of proof on review and the burden of seeking review is on the person against whom an order is directed, not upon the Secretary. Orders under SDCL 37–27–32 and 37–27–33 are not limited either in time or scope. The procedural scheme under SDCL ch. 37–27 thus does not conform to the *Freedman, supra,* standards, and it is thus highly probable that the statute is unconstitutional on its face.

(3) Vagueness and Overbreadth.

■ Statutes seeking to regulate solicitation for religious purposes must be such as to preclude the exercise of administrative discretion, and make the grant or denial of

a license virtually a ministerial act. *Swearson v. Meyers, supra.* If "men of common intelligence must necessarily guess at [the statute's] meaning" *Hynes v. Mayor of Oradell, supra,* 425 U.S. at 620, 96 S.Ct. at 1760, it is not sufficiently precise, and such imprecision may not be made clear by administrative discretion. The statute contains several vague terms such as "bona fide religion" and "related religious purpose". Deciding the meaning of these terms is necessarily left to unbridled administrative discretion. In addition, granting or denying an exemption to registration under SDCL 37–27–32 and 37–27–33 is not a ministerial act. In order to decide cases under these sections, the Secretary must exercise discretion unguided by anything other than what she determines to be in the public interest. The statute is, therefore, probably void for vagueness and overbreadth.

In light of the constitutional objections raised and the court's determination that SDCL ch. 37–27 suffers from a number of constitutional infirmities, the court believes that there is a substantial likelihood that plaintiffs will succeed at trial.

### B. *Irreparable Injury*

■ The Court believes that plaintiffs have shown irreparable injury by their showing that they will have their first amendment freedoms abridged if the injunction is not issued. Deprivation of first amendment freedoms, even for a short period, constitutes irreparable injury. *Elrod v. Burns,* 427 U.S. 347, 372–74, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (plurality); *Swearson v. Meyers, supra,* at 91; *International Society for Krishna Consciousness v. Kearnes,* 454 F.Supp. 116, 124 (E.D.Cal.1978); *St. Martin's Press, Inc. v. Carey,* 440 F.Supp. 1196, 1204 (S.D.N.Y.1977); *International Society for Krishna Consciousness v. Hays,* 438 F.Supp. 1077, 1081 (S.D.Fla.1977).

### C. *Absence of Harm to Other Interested Parties And to the Public Interest*

■ The traditional standards for granting or denying a preliminary injunc-

tion allow for consideration of these factors. Defendants have not indicated that they fear harm to themselves might result from granting the injunction. The only harm would come about because of defendants' inability to enforce SDCL ch. 37–27 during the pendency of this litigation. *Fennell v. Butler, supra,* considers the balance of harm. Although defendants speak of harm to the public interest, which could be caused if Unification Church solicitation is fraudulent, the court believes that this harm, if it were to come about, does not tip the balance in favor of defendants to the extent necessary to deny the injunction. The fact that prior censorship of religious solicitation may be a more effective means of deterring those solicitors who might engage in fraud does not mean that such censorship is permissible, or that it is in the public interest. In addition, the preliminary injunction does not finally determine the merits. If it is later found the statute is constitutional, the injunction can be dissolved. The injunction will remain in effect until further order of the Court, and will leave intact the State's ability to prosecute anyone, including plaintiffs, for any fraud committed at any time. For these reasons, the public interest does not require that the preliminary injunction be denied.

## II. Abstention.

The State asserts that the Court should abstain from deciding this case, under the principles of *Younger v. Harris, supra.* See also *Barry v. Barchi,* —— U.S. ——, 99 S.Ct. 2642, 2648, n.10, 61 L.Ed.2d 365 (1979); *Moore v. Sims,* —— U.S. ——, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979); *Babbitt v. United Farm Workers National Union,* —— U.S. ——, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979); *Zablocki v. Redhail,* 434 U.S. 374, 379–80 n.5, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978); *Ohio Bureau of Employment Services v. Hodory,* 431 U.S. 471, 97 S.Ct. 1898, 52 L.Ed.2d 513 (1977); *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977), aff'd after remand *sub nom. Quern v. Hernandez,* 440 U.S. 951, 99 S.Ct. 1488, 59 L.Ed.2d 765 (1979); *Woley v. Maynard,* 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977); *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975); *Hicks v. Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975); *Kugler v. Helfant,* 421 U.S. 117, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975); *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); *Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973); *Byrne v. Karalexis,* 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792 (1971); *Dyson v. Stein,* 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781 (1971); *Perez v. Ledesma,* 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971); *Boyle v. Landry,* 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971); *Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971); *Dombrowski v. Pfister,* 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); *Douglas v. City of Jeannette,* 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943).

This line of cases holds, essentially, that federal courts may not interfere with ongoing state court proceedings when to do so would frustrate important state governmental objectives and when the rights that a federal plaintiff seeks to protect can be adequately asserted in the ongoing state proceeding. If these conditions are met, the federal court must dismiss the suit and remit the federal plaintiff to his remedy in state court. The above cases show, however, that this principle is not universally applicable, but is applied where required by comity and federalism. No case of the United States Supreme Court has applied this rule of abstention to a wholly administrative proceeding. *See Ohio Bureau of Emplmnt. Serv. v. Hodory, supra.* In addition, the United States Supreme Court has held that 42 U.S.C. § 1983 (together with its jurisdictional counterpart, 28 U.S.C. § 1343(3)), under which plaintiffs proceed, is an explicit exception to the anti-injunction statute, 28 U.S.C. § 2283, which prohibits

injunctions against state court proceedings. *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972). No exhaustion of state remedies is required before the § 1983 federal remedy can be invoked. *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

The court does not feel that abstention as outlined in *Younger* and its progeny is appropriate to this case. Although there are certain "state proceedings" commenced, *see Moore v. Sims, supra,* and the State, no doubt, has a vital interest in protecting its citizens from fraud, there is no ongoing State *court* action. The fact that the present state proceeding is administrative rather than judicial is particularly significant where, as here, the constitutional objection concerns the very existence of the State administrative hearing itself. *Barry v. Barchi*, supra; *Gibson v. Berryhill, supra* 411 U.S. at 575, 93 S.Ct. 1689. South Dakota administrative agencies are not given the power, under SDCL ch. 1–26, to consider constitutional objections to the substance of the laws that provide for the agencies, nor may they consider constitutional objections to their own procedures. Even assuming that these plaintiffs could assert their constitutional rights through State administrative proceedings to which they are not parties, it is plain that the administrative tribunal could not consider such objections.

Defendants contend, however, that plaintiffs should be required to pursue their remedies in state court before coming to federal court. The state court is said to provide an adequate forum for raising the constitutional questions. Although this court is required to assume that the state court would apply the correct constitutional principles if the case were presented to it, defendants' contention must fail for at least two reasons. First, there is no showing

that these plaintiffs have a sufficient interest in the state proceeding so that they could raise their personal constitutional rights at any stage of that proceeding.[2] Second, there is no procedure for asserting constitutional questions before administrative agencies. An appeal to the state courts would permit considerable delay and would allow for a prior administrative hearing that plaintiffs contend the state has no right to hold. During the time of the administrative proceedings, plaintiffs would not be able to exercise their claimed first amendment freedoms, and the State would thus have accomplished a prior restraint without the benefit of the safeguards prescribed by *Freedman v. Maryland, supra.* Nor does the stay available under SDCL 1–26–32 require this Court to abstain. As noted above, plaintiffs are not required to exhaust state remedies before seeking relief from a federal court under 42 U.S.C. § 1983. The effect of requiring plaintiffs to choose the state forum over the federal forum at this stage of the proceedings would be to require exhaustion of state remedies contrary to *Monroe v. Pape, supra* and *Barry v. Barchi, supra.* We conclude, therefore, that abstention is not required where administrative proceedings, in which no constitutional challenges can be raised, have been commenced against a party whose relationship with the federal plaintiffs is unclear.

## CONCLUSION

For the reasons stated, plaintiffs' motion for a preliminary injunction is granted, and defendants' motion to dismiss based on the abstention doctrine of *Younger v. Harris, supra,* is denied.

---

**2.** The defendant cites *Hicks v. Miranda, supra* 422 U.S. at 348–49, 95 S.Ct. 2281, for the proposition that parties represented by the same attorneys and having similar interests should be considered to be one for application of the *Younger* doctrine. That case involved rights asserted by theater owners, when theater employees were involved in State obscenity pro-

ceedings. This proposition is inapplicable here. The court does not believe that plaintiffs should be required to intervene in proceedings in which they could not assert the rights they seek to have vindicated. Also, the court has no present knowledge and does not rule on the possible identity of issues or counsel of the church and plaintiffs.