**E.I. DU PONT DE NEMOURS AND COMPANY, Plaintiff,**

v.

**ANDRAEA PARTNERS, et al., Defendants.**

No. Civ.99–750 ACK.

United States District Court, D. Hawaii.

May 9, 2001.

John R. Lacy, Goodsill Anderson Quinn & Stifel, Honolulu, HI, Warren Price, III, Price Okamoto Himeno & Lum, Honolulu, HI, A. Stephens Clay, William H. Boice, James F. Bogan, Kilpatrick & Cody, Atlanta, GA, for plaintiff.

Melvin Y. Agena, Honolulu, HI, Mark B. Hutton, Hutton & Hutton, Wichita, KS, Daniel W. Sigelman, Kellogg Saccoccia & Sigelman, Washington, DC, for defendants.

### ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

KAY, District Judge.

### BACKGROUND

This case stems from an underlying state court lawsuit that was filed by the Defendants in this case, allegedly in violation of a settlement agreement between Defendants and E.I. du Pont de Nemours and Company ("Plaintiff" or "DuPont"). The following facts are taken from Plaintiff's First Amended Complaint ("Complaint" or "Compl."). The facts are allegations, but for purposes of this opinion the Court will assume them to be true.

Defendants, too numerous to list, filed lawsuits against Plaintiff and others in 1992 and 1993, in Hawaii state court, asserting products liability and other claims relating to the fungicide Benlate® ("Benlate") ("Benlate lawsuits").[1] Defendants were farmers and growers who used the DuPont fungicide in their growing practices. The cases eventually settled. Attorneys Kevin A. Malone, Judith Pavey, and Howard Glickstein represented a number of Defendants in the Benlate lawsuits, and entered into settlement agreements in 1994. Defendants Flowers, Inc., Mark C. Willman d/b/a Hawaii Orchids, and James McCully also entered into settlement

---

1. Many similar suits were filed by commercial growers across the nation.

agreements in 1994 or 1995. All of the settlement agreements are substantially similar.

The settlement agreements contain language releasing Plaintiff from any claims relating to the underlying dispute.[2] Furthermore, each of the Defendants agreed to indemnify and hold Plaintiff harmless from and against:

> [A]ny and all claims, including all claims for court costs and attorney's fees, asserted against [Plaintiff], contrary to the provisions of this Release, as a result of or in connection with any action or other proceeding brought by or prosecuted for the benefit of [Defendant], or by any person making a claim by, through or under [Defendant] or as a result of any sale, assignment, transfer, conveyance or other disposition of [Defendant's] claims. A claim shall be deemed to have accrued under this agreement of indemnity immediately upon the commencement of any such action or other proceeding, and in such event, this Release may be pleaded as a full and complete defense thereto, as the basis for an abatement of or injunction against said action or other proceedings, and as the basis of a counterclaim or cross-claim for damages therein.

*Id.* ¶ 32.

Plaintiff asserts that all parties intended the settlement agreements to bar, release and preclude any further litigation of any and all claims, including any relating to

---

2. Specifically, the Malone and McCully Settlement agreements both stated that those Defendants desired to "release and dispose of all claims against [Plaintiff] and all claims incident thereto against [Plaintiff], thereby finally disposing of same, and to give assurance that [Defendants] will not hereafter prosecute such claims or cause them to be prosecuted." Compl. ¶ 23.

The Pavey/Glickstein and Willman Settlement agreements contains similar language, stating that those Defendants desired to "release and dispose of all claims against [Plaintiff], thereby finally disposing of same, and to give assurance that [Defendants] will not hereafter prosecute such claims or cause them to be prosecuted." *Id.* at ¶ 24. The contracts further provide that each of those Defendants release Plaintiff from "any and all causes of action, claims, demands, actions, obligations, damages, or liability, which [Defendants] asserted or which could have been asserted against [Plaintiff] in the Action." *Id.* ¶ 29.

The Malone and McCully Settlement agreements contained the following release release clause:

> [A]ny and all causes of action, claims, demands, actions, obligations, damages, or liability, whether known or unknown, that [Defendants] ever had, now has, or may hereafter have against [Plaintiff], by reason of any fact or matter whatsoever, existing or occurring at any time up to and including the date this Release is signed (including, but not limited to, the claims asserted and sought to be asserted in the Action). *Id.* ¶ 26. The McCully Contract additionally contained the following language: "[McCully] acknowledges and agrees that this is a full, final and complete release of any and all claims whatsoever of any kind or character which [McCully] has or may have against [DuPont]." *Id.* ¶ 28. The Contract further provides the following covenant not to sue:

> [McCully] covenants that [McCully] will not commence, prosecute, or permit to be commenced or prosecuted against [DuPont] any action or other proceeding based upon or in any way related to any facts or matters whatsoever, causes of action, claims, demands, actions, obligations, damages, or liabilities which are the subject this [sic] Release.

*Id.* ¶ 31.

The Malone, Pavey/Glickstein, and Willman Settlement agreements contained the following covenant not to sue:

> [Defendant] covenants that [Defendant] will not commence, prosecute, or permit to be commenced or prosecuted against [Plaintiff] any action or other proceeding based upon or in any way related to any causes of action, claims, demands, actions, obligations, damages, or liabilities which are the subject of this Release.

*Id.* ¶ 30.

Plaintiff's discovery responses; fraud; concealment and discovery abuse; and claims relating to spoliation of evidence, fraudulent misrepresentation, negligent misrepresentation, nondisclosure, intentional interference with prospective economic advantage, civil conspiracy, violation of constitutional rights, and exemplary damages ("Settlement Fraud Claims"). *See id.* ¶ 45.

Plaintiff further contends that the release from such claims was a fully informed decision, because at the time of the execution of the contracts, Defendants had not completed discovery, and there were similar Benlate cases against Plaintiff in which disputes, allegations and accusations about Plaintiff's discovery and other litigation conduct had been made. *See id.* ¶ 44.[3]

After execution of the settlement agreements, all of the Defendants dismissed the underlying actions by "Stipulation for Dismissal With Prejudice of All Claims and Parties," each of which expressly provided that "[t]here are no remaining parties and/or issues." *Id.* ¶ 37.

Defendants subsequently filed an action in Hawaii State Court against Plaintiff: *Exotics Hawaii Kona, Inc., et al. v. E.I. du Pont de Nemours and Co., et al.*, Civ. No. 97–103K (Haw.3d Cir.Ct.) (the "*Exotics* State Court Action"), in the Third Circuit.[4] Defendants assert Settlement Fraud Claims, alleging that Plaintiff's purported failure to make disclosures and provide discovery in various Benlate cases, including those in Hawaii state court, defrauded Defendants into settling for less than fair value.[5]

Plaintiff filed a Complaint with this Court on October 28, 1999, and a First Amended Complaint on February 7, 2000, seeking, *inter alia*, damages and an injunction prohibiting Defendants from pursuing the state action in violation of the settlement agreements. Plaintiff alleges that Defendants' Settlement Fraud Claims are barred by the Settlement Documents, and Defendants knew or should have known of the discovery abuse claims made in other Benlate cases prior to the execution of the settlement agreements. Plaintiff further asserts that Defendants' claims are barred by Hawaii's one-year statute of limitations. *See id.* ¶ 101.

Plaintiff asserts the following causes of action: (1) breach of contract (breach of the covenants not to sue and other provisions of the settlement contract), seeking damages and indemnification; (2) specific performance requiring Defendants to terminate their initiation and prosecution of their claims in the *Exotics* State Court Action and of any other Settlement Fraud Claims against Plaintiff; (3) a permanent injunction enjoining Defendants from initiating or prosecuting such claims; (4) reformation of the Settlement Contracts due to mutual or unilateral mistake; (5) restitution of the amount of the full settlement

---

3. A number of Hawaii state court Benlate cases were consolidated for purposes of discovery, including some of Defendants' cases as well as the *Kawamata/Tomono* cases which went on to trial. From the commencement of discovery in November 1992 until the issuance of an amended punitive sanction order in May 1995 after the *Kawamata/Tomono* trial, the circuit court issued twenty-seven orders imposing sanctions on DuPont for discovery violations. *See Kawamata Farms, Inc. v. United Agri Products*, 86 Hawai'i 214, 223–224, 948 P.2d 1055 (Haw.1997).

4. The First Amended Complaint in the *Exotics* State Court Action names each of the Defendants as Plaintiffs.

5. The *Exotics* State Court Action First Amended Complaint contains ten counts: intentional spoliation of evidence, negligent spoliation of evidence, fraud, fraudulent misrepresentation, negligent misrepresentation, nondisclosure, intentional interference with prospective economic advantage, civil conspiracy, violation of Hawaii constitutional rights, and exemplary damages.

paid by Plaintiff to Defendants, with interest. Defendants have not yet filed an answer.

On June 27, 2000, this Court denied Defendants' motion to dismiss the complaint, in which Defendants claimed lack of jurisdiction based on the forum selection clauses in the previous stipulations for dismissal. The Court found that Defendants had waived their right to seek exclusive jurisdiction in the Third Circuit.

On January 4, 2001, Defendants filed the instant motion to dismiss based upon the *Younger* abstention doctrine.[6] Plaintiffs filed an opposition on April 19, 2001. Defendants filed a reply on April 27, 2001. The Court held a hearing on the motion on May 7, 2001.

### STANDARD

Under Rule 12(b)(6), in ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, this Court must accept as true the plaintiff's allegations contained in the complaint and view them in a light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Wileman Bros. & Elliott, Inc. v. Giannini*, 909 F.2d 332, 334 (9th Cir.1990); *Shah v. County of Los Angeles*, 797 F.2d 743, 745 (9th Cir.1986). Thus, the complaint must stand unless it appears beyond doubt that the plaintiff has alleged no facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988). A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal

theory. *Balistreri*, 901 F.2d at 699; *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533–34 (9th Cir.1984).

A motion under Rule 12(b)(6) should also be granted if an affirmative defense or other bar to relief is apparent from the face of the Complaint, such as lack of jurisdiction or the statute of limitations. 2A J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice*, ¶ 12.07 at 12–68 to 12–69 (2d ed.1991 & supp. 1191–92) (citing *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)) (emphasis added).

### DISCUSSION

 Defendants seek dismissal of the instant federal case based on the *Younger* abstention doctrine. *See Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (finding a federal court should not enjoin a pending state criminal proceeding except in extraordinary circumstances). *Younger* and its progeny are based on the interests of comity and federalism that counsel federal courts to maintain respect for state functions and not unduly interfere with the state's good faith efforts to enforce its own laws in its own courts. *See Middlesex County Ethics Committee v. Garden State Bar Assoc.*, 457 U.S. 423, 431, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) ("*Middlesex*"); *Dubinka v. Judges of Superior Court of State of California, Los Angeles*, 23 F.3d 218, 223 (9th Cir.1994); *Lebbos v. Judges of Superior Court, Santa Clara*, 883 F.2d 810, 813 (9th Cir.1989). The *Younger* doctrine stems from this longstanding public policy against federal court interference with state court proceedings. *Younger*, 401 U.S. at 43, 91 S.Ct. 746.

---

**6.** Defendants styled their motion as a "motion to dismiss" under Rule 12(c). Rule 12(c) motions are for judgment on the pleadings, properly made after the pleadings are closed. *See* Fed.Rule Civ.Pro. 12(c). Judgment on the

pleadings is not possible at this time because the Defendants' answer has not yet been filed, therefore, the Court will treat the instant motion as a Rule 12(b)(6) motion to dismiss.

■ Although *Younger* involved a state criminal prosecution, the doctrine has been extended to noncriminal judicial proceedings when important state interests are involved. *Middlesex*, 457 U.S. at 432, 102 S.Ct. 2515; *Lebbos*, 883 F.2d at 814. The Ninth Circuit follows a three-prong test espoused by the Supreme Court to determine whether abstention under the *Younger* doctrine is appropriate. Abstention by the district court is required if (1) state judicial proceedings are ongoing, (2) the proceedings implicate important state interests, and (3) there is an adequate opportunity in the state proceedings to raise federal questions. *Delta Dental Plan of California, Inc. v. Mendoza*, 139 F.3d 1289, 1294 (9th Cir.1998); *Communications Telesystems Int'l v. California Public Utility Comm'n*, 196 F.3d 1011, 1015 (9th Cir.1999). *See also Middlesex*, 457 U.S. at 432, 102 S.Ct. 2515.

■ If these three requirements are met, the court must also consider whether any of the narrow exceptions to the *Younger* abstention doctrine apply. If the state court proceedings were undertaken for bad faith or for purposes of harassment, or if some other "extraordinary circumstances" exist, the district court should not abstain. *Younger*, 401 U.S. at 54, 91 S.Ct. 746; *Dubinka*, 23 F.3d at 225; *Lebbos*, 883 F.2d at 816. The extraordinary circumstances exception recognizes that a federal court need not abstain when faced with a statute that is flagrantly unconstitutional in every clause. *Dubinka*, 23 F.3d at 225; *Korean Buddhist Dae Won Sa Temple of Hawaii v. City and County of Honolulu*, 952 F.Supp. 679, 687 (D.Haw.1996).

In the instant case, Plaintiff does not contest that the Exotics State Court Action ·is "ongoing" as defined in the first prong of the *Younger* analysis. *See* Opposition at 15. Rather, the disputed issue is whether the state court proceeding implicates important state interests under the second prong of the analysis.

## A. Important State Interests

■ The *Younger* doctrine is "fully applicable to noncriminal judicial proceedings when important state interests are involved." *Middlesex*, 457 U.S. at 432, 102 S.Ct. 2515; *Lebbos*, 883 F.2d at 814.[7] A state or other public entity need not be a party to the suit for an important state interest to be implicated. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (*Younger* abstention doctrine required district court to abstain from hearing claim between two private parties); *Old Republic Union Ins. Co. v. Tillis Trucking Co., Inc.*, 124 F.3d 1258, 1263 (11th Cir.1997) (important state interests can support invocation of *Younger* abstention in context of proceedings involving purely private parties); *but see Rowland v. Novus Financial Corp.*, 949 F.Supp. 1447, 1456 (D.Haw.1996) (suggesting fact that suit involves two private parties may lend towards finding no state interest; finding that foreclosure proceeding between two private parties does not raise important state interests, but noting that important state interests would be involved where private party case implicates the state judiciary process itself). The Supreme Court has held that "[p]roceedings necessary for the vindication of

7. At the hearing on the instant motion, Plaintiff stated that there must be a constitutional claim at issue for *Younger* abstention to apply. As support, Plaintiff referred to the *Younger* and *Middlesex* cases. However, these cases do not stand for such a proposition. As discussed herein, the Supreme Court and Ninth Circuit require that an "important state interest," not a constitutional issue, be involved in the proceeding. *See, e.g., Middlesex*, 457 U.S. at 432, 102 S.Ct. 2515; *Fresh Int'l Corp. v. Agricultural Labor Relations Board*, 805 F.2d 1353, 1358 (9th Cir.1986).

important state policies or for the functioning of the state Judicial system [ ] evidence the state's substantial interest in the litigation." *Middlesex,* 457 U.S. at 432, 102 S.Ct. 2515; *Lebbos,* 883 F.2d at 814.

■ The Court finds that the proceeding implicates important state interests. The state has important interests in preventing and rectifying fraud committed by litigants in its courts, ensuring that settlement agreements approved by the courts are not based on fraud, and remedying those that are. *See, e.g., Matsuura v. Alston & Bird,* 166 F.3d 1006, 1012 (9th Cir.1999) (recognizing that enforcing settlements induced by fraud would undermine state policies of encouraging voluntary settlement of disputes); *Kawamata Farms, Inc. v. United Agri Products,* 86 Hawai'i 214, 948 P.2d 1055 (Haw.1997) (recognizing "strong public policy against litigants committing fraud within the courts;" granting affirmative relief in the form of amended findings of fact and conclusions of law based on egregious nature of the fraud committed by DuPont in a related Benlate case). *See also Trainor v. Hernandez,* 431 U.S. 434, 444, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (important state interest in recovering fraudulently obtained welfare payments and safeguarding integrity of welfare program); *Lebbos,* 883 F.2d at 814 (important state interest where action involved challenge to the process by which the state compels compliance with judgments of its courts); *Alfa Financial Corp. v. Key,* 927 F.Supp. 423, 432 (M.D.Ala.1996) (important state interests in addressing claims of insurance fraud and possessing full range of remedies to redress findings of fraud); *Walker*

*v. Wegner,* 477 F.Supp. 648, 655 (D.S.D. 1979) (important state interest in protecting citizens from fraud; no abstention because no ongoing state court action).[8]

■ Like a court's contempt power, which is an important state interest, the important interests at issue here serve to "vindicate and preserve the private interests of competing litigants ... in aid of the authority of the judicial system, so that [court] orders and judgments are not rendered nugatory." *Pennzoil,* 481 U.S. at 12–14, 107 S.Ct. 1519 (abstaining under *Younger* because "[s]tates have important interests in administering certain aspects of their judicial systems," including the interest in forcing persons to respond to the court's process on pain of contempt) (citing *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977)).

Should this Court fail to abstain from hearing the instant case, it would damage the interests of comity and federalism that counsel federal courts to maintain respect for state functions and not unduly interfere with the state's good faith efforts to enforce its own laws in its own courts. By granting injunctive relief and specific performance as sought by Plaintiff in this federal case, this Court would be interfering with the state's interests in rectifying fraud committed by litigants in its courts and preserving the settlement process by remedying any settlement that may have been induced by fraud. As the alleged fraud took place in state court and is now at issue in the underlying *Exotics* State Action before that same judge, notwithstanding that similar cases have been brought by a handful of plaintiffs in this court,[9] in the interests of comity and feder-

---

**8.** The Court notes that both parties agreed at the hearing on the instant motion that there is an important state court interest in determining the scope of litigation immunity in this and related cases. The parties plan to seek

Hawaii Supreme Court certification of that issue.

**9.** Magistrate Judge Kobayashi has consolidated five DuPont cases, involving a total of eight claimants, for a common issues trial. Judge

alism, this Court must abstain from hearing the instant case.

## B. Adequate Opportunity To Raise Federal Claims

■ To meet the third criteria for abstention under the *Younger* doctrine, there must be an adequate opportunity in the state proceedings to raise federal questions. *Delta Dental Plan of California,* 139 F.3d at 1294; *Communications Telesystems Int'l,* 196 F.3d at 1015. The basis for jurisdiction of the instant law suit is diversity. Neither party has articulated or identified any federal question to be adjudicated. The Court finds that even if there were a federal question, there would be adequate opportunity to raise and adjudicate such claims in the Hawaii state court litigation.[10] Therefore, the third criteria for application of the *Younger* doctrine is satisfied.

## C. Exceptions to the *Younger* doctrine

The parties have not alleged, nor has the Court found, any bad faith or harassment by Defendants. Furthermore, the Court finds that no exceptional circumstances exist. Therefore, none of the exceptions to the *Younger* abstention doctrine apply to

the case at bar. *See, e.g., Younger,* 401 U.S. at 54, 91 S.Ct. 746; *Dubinka,* 23 F.3d at 225.

## CONCLUSION

■ For the foregoing reasons, the Court concludes that the state judicial proceeding is ongoing, implicates important state interests, and there is an adequate opportunity in the state proceedings to raise any federal questions. No bad faith prosecution or harassment are present, nor do any exceptional circumstances apply. Accordingly, the Court finds that the *Younger* doctrine requires abstention in this case.[11] The Court GRANTS Defendants motion to dismiss and dismisses this case without prejudice.[12]

IT IS SO ORDERED.

---

Kobayashi, however, denied Plaintiff's motion to consolidate the instant case, which includes some sixty claimants.

10. Plaintiff argues that *"Younger* abstention is not necessarily *proper* merely because the state forum provides such an opportunity." Opposition at 24. However, Defendants do not make such an assertion. As discussed, *supra,* abstention is *improper* were the state court proceeding does not allow adequate opportunity to raise a federal question, but abstention is only proper where *all three Younger* criteria are satisfied.

11. "When a case falls within the proscription of *Younger,* a district court *must* dismiss the federal action." *Fresh Int'l Corp.,* 805 F.2d 1353, 1356 (9th Cir.1986) (emphasis added).

12. Defendants state that the Hawaii Supreme Court's specific findings of DuPont's misconduct in *Kawamata Farms,* 86 Hawai'i 214, 948 P.2d 1055, should be taken by this Court as irrefutable facts under the doctrines of res judicata and collateral estoppel. This Court need not reach that argument in dismissing this case under the *Younger* doctrine.